PER CURIAM.
Paul Goodwin, who is scheduled to be executed on December 10, 2014, has- filed an application for a certificate of appeala-bility with respect to his Eighth Amendment claim of intellectual disability. In the alternative, Goodwin has filed a motion for authorization to file a second or successive application. In both of these filings, Goodwin claims that he is intellectually disabled and that the Supreme Court of Missouri issued a decision that was contrary to the United States Supreme Court’s decision in Hall v. Florida, — U.S. —, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014). We deny Goodwin’s application for a certificate of appealability and deny his motion for authorization to file a second or successive application. We also deny Goodwin’s related motions for stay.
Goodwin was convicted of first-degree murder and sentenced to death, and the Supreme Court of Missouri affirmed his conviction and sentence. State v. Goodwin, 43 S.W.3d 805, 809 (Mo.2001). A state motion court denied Goodwin’s request for post-conviction relief, and the Supreme Court of Missouri affirmed. Goodwin v. State, 191 S.W.3d 20, 23 (Mo.2006). In rejecting Goodwin’s argument that he established significantly sub-average intellectual functioning, the court noted that “Goodwin has eight independent intelligence tests spread over twenty years that indicated that Goodwin is not retarded.” Id. at 30. Based upon this record, the court concluded that Goodwin’s single IQ score within the five-point margin of error for the Wechsler scale of sub-average intellectual functioning was “inadequate to raise a triable issue of fact.” Id. at 30-31. Goodwin thereafter filed a petition under 28 U.S.C. § 2254, raising numerous claims. As Goodwin now admits, he asserted- in one of these claims that he was intellectually disabled, rendering his execution unconstitutional under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The district court denied relief on this claim and declined to issue a certificate of appealability. See Goodwin v. Roper, No. 4:06CV848, 2009 WL 3228696, at *21, 26 (E.D.Mo. Sept. 30, 2009).
Shortly after his date of execution was set, Goodwin filed a motion to recall the mandate in the Supreme Court of Missouri, arguing that its earlier decision conflicts with the Supreme Court’s decision in Hall. After the Supreme Court of Missouri overruled this motion, Goodwin raised this claim before the district court in a supplemental petition for a writ of habeas corpus. The district court found that Goodwin’s Hall claim is barred by 28 U.S.C. § 2244(b)(1) and also concluded that it fails on the merits. The district court declined to grant a certificate of appealability, prompting Goodwin to file an application for a certificate of appealability and a mo *903 tion for authorization to file a second or successive application.
We state our conclusions briefly because of the exigency of time. We first conclude that jurists of reason would not find debatable the correctness of the district court’s conclusion that Goodwin’s claim is barred by 28 U.S.C. § 2244(b)(1). See Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). This provision provides that “[a] claim presented in a second or successive habe-as corpus application under section 2254 that was presented in a prior application shall be dismissed.” § 2244(b)(1). Goodwin concedes in his application that “[i]n his original habeas proceeding, [he] raised the claim that he is mentally retarded and ineligible for execution under [sic] Adkins.” In particular, in Ground “I” of his initial habeas application, Goodwin asserted that “[t]he Eighth Amendment precludes the execution of the mentally retarded” and that “clear and convincing evidence exists that [Goodwin] is mentally retarded.” Goodwin seeks to distinguish this claim from his current claim, arguing only that the latter claim is premised on Hall, not Atkins, and asserting that this difference matters. This argument runs headlong into our decision in Thompson v. Nixon, 272 F.3d 1098 (8th Cir.2001). There, the petitioner filed a motion to recall the mandate and claimed that a recent Supreme Court decision allowed him to bypass the limit on second or successive applications set forth in § 2244(b)(1). Id. at 1099. We rejected this reading of § 2244(b)(1), concluding that the Supreme Court decision relied upon by the petitioner “simply provides a new argument (the merits of which we need not explore) in support of the same [constitutional] claim that has been presented twice before.” Id. at 1101. Under Thompson, jurists of reason cannot debate the correctness of the district court’s conclusion that Goodwin’s intellectual-disability claim was presented in a prior application and therefore barred under § 2244(b)(1).[1]
Second, even if this proposition were reasonably debatable, Goodwin was required to request authorization from us before pursuing a second or successive habeas application under § 2244(b)(2). See 28 U.S.C. § 2244(b)(3)(A) (“Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.” (emphasis added)). Because Goodwin did not take this statutorily required step before filing his supplemental petition, jurists of reason cannot debate the correctness of the district court’s dismissal of Goodwin’s supplemental petition.
This brings us to Goodwin’s motion for authorization to file a second or successive habeas application. 28 U.S.C. § 2244(b)(3)(C) prescribes that we may authorize the filing of such an application *904 “only if [we] determine[ ] that the application makes a prima facie showing that the application satisfies the requirements of this subsection.” In his motion for authorization, Goodwin contends that his intellectual-disability claim is permitted by § 2244(b)(2)(A) — namely, that the claim “was not presented in a prior application” and “the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” Even assuming Goodwin’s present claim was not presented in a prior application, we conclude that Goodwin has not made this prima facie showing. In Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), the Supreme Court interpreted § 2244(b)(2)(A) to conclude that a new rule is not “made retroactive” unless the Supreme Court holds it to be retroactive. Id. at 663, 121 S.Ct. 2478. Under Tyler, it is not enough for the Supreme Court merely to “establish[ ] principles of retro-activity and leave[ ] the application of those principles to lower courts.” Id. Justice O’Connor, who provided the decisive fifth vote in Tyler, further explained that the Supreme Court can “ ‘ma[k]e’ a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule.” Id. at 668, 121 S.Ct. 2478 (O’Connor, J., concurring).
Under Tyler, Goodwin has not made a prima facie showing that the Supreme Court has held that Hall is retroactive. The Eleventh Circuit recently reached an identical conclusion. See In re Henry, 757 F.3d 1151, 1153 (11th Cir.2014) (denying motion for authorization to file second or successive application “because [petitioner] cannot circumnavigate the stringent requirements for leave to file a second or successive petition found in § 2244(b)”). As the Henry court explained, “Hall made no mention of retroactivity. Nor has any subsequent Supreme Court case addressed the issue, much less made Hall retroactive.” Id. at 1159. The dissent attempts to overcome the Supreme Court’s total silence on the retroactivity of Hall by relying on the Court’s other case law indicating that a substantive rule may be applied retroactively. The dissent characterizes Hall as a substantive rule that altered the “class of persons that the law punishes.” Infra at 905 (quoting Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)). But “Hall merely provides new procedures for ensuring that States do not execute members of an already protected group.” Henry, 757 F.3d at 1161. Indeed, the dissent understands Hall to hold that “defendants with IQ scores above 70 in Florida may be considered intellectually disabled under Atkins.” Infra at 905 (emphasis added). Rather than announce a substantive rule, Hall “created a procedural requirement that those with IQ test scores within the test’s standard of error would have the opportunity to otherwise show intellectual disability.” Henry, 757 F.3d at 1161 (emphasis in original). This conclusion is borne out by the language of Hall itself: “[W]hen a defendant’s IQ test score falls within the test’s acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive benefits.” 134 S.Ct. at 2001 (emphasis added).
For these reasons, we deny Goodwin’s application for a certificate of appealability and deny his motion for authorization to file a second or successive habeas application. We also deny Goodwin’s related motions for stay of execution.

. We also reject Goodwin’s argument that his Hall claim was not "ripe” until the Supreme Court issued its decision in Hall. For this proposition, Goodwin relies on Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), and Magwood v. Patterson, 561 U.S. 320, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010). Stewart and Panetti concerned competency claims brought under Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), that did not become ripe for federal review until the State established a date of execution. Stewart, 523 U.S. at 643, 118 S.Ct. 1618; Panetti, 551 U.S. at 947, 127 S.Ct. 2842. Goodwin’s Eighth Amendment claim, by contrast, ripened long ago. Nor does Magwood support Goodwin's ripeness argument, for the petitioner there, unlike Goodwin here, was challenging a new judgment following the grant of habeas relief. See Magwood, 561 U.S. at 326-28, 130 S.Ct. 2788.